Case number 22-7110 et al. International Union, United Mine Workers of America, Appellant, James F. Berry et al. versus Consol Energy Inc. and its following subsidiaries et al. Mr. Fagan for the appellant, Mr. Woodrum for the appellees. Good morning, your honors. Kevin Fagan on behalf of United Mine Workers of America. I'd like to reserve five minutes for rebuttals. There are two issues before this court. The first issue is respect to vacater and how the district court got the decision with respect to vacater correct. The second issue is the standing of America. District court decided that the union lacked article 3 standing, constitutional standing to pursue its confirmation of the underlying arbitration award. I'd like to vote focus please on the vacater argument initially. I think we're better to start with the procedural and then a couple additional questions that we ask because we don't get to the merits issues unless we get to the special. Certainly, your honor. My oversight there. Three questions were posed to the parties on money and we thank you for doing so in advance of this argument. The first question posed was the standing of the subsidiaries to press their cross appeal seeking vacater of an arbitration award to which they do not appear to be a party and by which they do not appear to be bound. It's the UMWA's position that they are indeed a party to this raw decision and that the record evidence establishes that. The subsidiaries were signatory to the 2011 collective bargaining agreement. That collective bargaining agreement in article 20 requires them to develop an employer plan, an EDP, Employer Benefit Plan, which provides lifetime health care benefits to union retirees. It did so through the plan administrator, Consol Energy, plant company. In the initial, in the district court phase in the southern district of West Virginia, Judge Faber found that Consol Energy was indeed a plan administrator, was in fact indeed signatory to the collective bargaining agreement and quote, the court finds, in fact indeed, Sol Energy was an agent of the subsidiaries, none of whom have employees or other personnel adequate to make administrative decisions. Did you say Consol was a signatory? Yes, Judge Faber. Is there a list of signatories not including Consol? Pardon me? Isn't there a list of signatories at the end of the agreement not including Consol? Um, Judge Faber found that they were signatory to the collective bargaining agreement for a few reasons. Number one, their chairman, Mr. Nicholas Deolius, was the chairman of the BCOA, the Petunias Coal Operators Association, which is the multi-employer group that negotiates on behalf of its members. Mr. Deolius also signed certain side letters of agreement appended to the collective bargaining agreement and based on that, Judge Faber found that Consol Energy, the parent company, was a signatory to the contract. Yes. The thing we're talking about is who was a party to the arbitration and against whom does the arbitration award run? Well, Judge Faber found them to be the real party of interest. Judge, I'm going to ask you a direct question. Is anyone other than Consol Energy named as a defendant in the arbitration? Well, the raw decision itself speaks to the subsidiaries and speaks to the fact that Consol Energy was appearing on behalf of the subsidiaries. Where does it say that? It says so, let's see. Under jurisdiction, Your Honor, go to appendix 375. Respondent acts as a plan administrator for certain subsidiary companies that were signatory to the 2011 NBCWA. Respondent acts as a plan administrator for certain subsidiary companies. The respondent is the plan administrator. Consol may be acting, but I don't... Is there an agency finding in the award? Yes, there were. Any award? There was an agency finding by Judge Faber. I understand. That was after the fact, the finding by the trustees. I don't think there's a specific finding in the agency. So again, the respondent is the plan administrator at Consol, not the subsidiaries. I'm getting a little feedback. I'm sorry. Assign yourself to the arbitration itself in that award. The named respondent, you all picked who that would be, and you picked Consol. They were sending the letters. I understand why. You picked Consol and Consol only. That's a plan administrator. That's correct. And the award runs against Consol, Consol Energy only. That's your construction, Your Honor. We would disagree. Okay. So as you know, with arbitrations, we don't really... We take them on face value. We don't add to them or subtract from them. So where is the finding in here that anyone other than a plan administrator was the named respondent to this arbitration? Your Honor, the conduct engaged in, which gave rise to the dispute between the party, was all in Consol Energy letterhead on behalf of the subsidiaries. I'm going to ask you again. This is just a factual question or content question, pointing to the language where the arbitrators found that, in fact, notwithstanding how you all framed the arbitration, the subsidiaries themselves were named respondents and are bound by this award? They are not named in the reward. That is correct, Your Honor. Okay. And then is there any case authority that lets us... You're arguing that there's an agency thing or the real party in fact or something like that, but is there any case authority that federal courts, either in the MLRA or I guess if you have a Federal Arbitration Act case, we can think about it, can rewrite this award to say it runs against entities who are not named? There's no case law that says that they can rewrite the award. Well, we have to take the award as given. Certainly. Back again to how they stand for their counterclaims that they are not a party to the arbitration. It can't be enforced against them. I think you can't make that determination without considering the status of the subsidiary. The record establishes that the subsidiaries that favor recognizes had no administrative construct. They were a shell company. They had no... None of that's in the award. None of that's in their decision, trustee's decision or the award. So, your point is that you wanted to use the confirmation process to not just confirm the award but then make sort of factual and legal determinations about against whom the award legally operates? Your Honor, we would argue that Consol and the subs are the same. I understand you would argue that. I am arguing. You can argue that all day, but you've also agreed that the trustees made no such findings. The trustees discussed the employer and the employer in this decision is Consol. The trustees made no such findings. When you confirm this award, you're confirming it against Consol. Yes. Why do you want to be bound by this? It's adverse. Why do you want so badly to be bound by this arbitration? We want the subsidiaries to be bound, Judge, because they've undertaken a contractual This award was filed by an employee and the grievance he filed was affirmed. The arbitrator said, yes, employee, you are right. And so, we're going to issue this award binding the respondent, which is Judge Millett pointed out and as you have conceded is the plan administrator right there, page 375. The respondent singular acts as the plan administrator. And just to be clear, the subsidiaries were never were not plan administrators at this time, right? No. Consol was the only plan. They let their parent company, I assume the parent company. Here's an award adverse to the plan administrator. It's not adverse to the subsidiaries, but you seem to want the subsidiaries to be bound by an award that would be adverse. The trustees of this decision, in effect, enjoined plan administrator for making any post contract changes to the level of benefits. Of course, we want that to apply to Consol's own subsidiary. Are they the current plan? Who's who's who is the plan administrator since Consol disappeared six years ago? It's a good question, Your Honor. As far as we could tell, there was a there was a series of restructures. We think the publicly traded entity known as Consol Energy is the plan administrator. So not the subsidiaries. That's correct. And if you look at the record, if you were to substitute substitute in their replacement, the successor plan administrator, it would not be the subsidiaries. It would be Consol round two. It would be the successor to the plan administrator. The subsequent plan administrator. When Mr. Salvatore, who's the HR director of Consol Energy, was asked in his 30B6 deposition whether the subsidiaries had any personnel or had any ability to administer these plans, he said no. And he said that is done by our corporate parents. Right. So the subsidiaries have no ability to administer this plan. You just said that. What do you want from them? They're not the ones administering it. They're not the ones that can make the change your Consol that no longer exists was granting. Certainly. We want the injunction, basically, that the Rod trustees developed to apply to the signatories to the contract, the subsidiaries. We're all out of business, by the way, judge. And they only and they only operate as Mr. Salvatore admitted to administer. It's lingering. The residual contractual commitments, one of which is this entity you're assuming they're doing it through this entity that we'll call Consol two or whatever. This new entity that's nowhere in the award not wouldn't be bound. I mean, I'm a little confused about why we're supposed to confirm an award against an entity that doesn't exist. Well, your honor, if it's the court deems that there's further factual funding that needed on that on that issue. First, we're trying to figure out whether your subsidiaries have filed counterclaims. And we're trying to figure out whether they have article three standing to have done that. That's right. And I wouldn't presume to speak on behalf of Mr. Woodrum. You think they do have standing because you think they're bound by this? We absolutely have been saying that throughout this litigation, that the subs are signatory. They had a plan administrator. They obviously speak to one another. Are there just I just don't know. Are there any cases that say an labor arbitration decision against an agent automatically encompasses and binds um the principles? Um, Judge Faber in his footnote, footnote 12 says, case law further supports this court's previous ruling. He cites a case finding a single employer where interrelation of operations, common ownership or centralized control of labor relations are present. They are Ryan v. Suns. That's that requires factual funding. I understand when the charges against the parent company and sub are based on the same facts and are inherently inseparable. The court may refer claims against the parent to arbitration, even though the parent is not formally a party to the arbitration agreement. That's set forth in his decision. Right. That's a different question about whether console. It's been very restraining. Where console can be named here as a party to the arbitration. But but we take that as given. With all due respect, and I mean this with all due respect. Anybody in the cold? Anyone in the cold? Nobody ever says, hey, I'm employed by a visa. We never received a letter from a visa. We didn't receive a letter for a money. And I never received a great factual evidence that everybody who works for console knows that they work through through what used to be scores subsidiary. And so is the real party of interest here. And so, as stated previously, your honors, if there's a dispute about that, if you're not convinced of that, perhaps there needs to be additional fact finding that air. OK. And then there were two other questions about the way this case was. Not avoiding question. No, no, you're not. I've distracted you with a question. The second question is under what authority did the district court dismiss counts three and for the subs counterclaim? As I initially indicated, Judge, I would I would I would defer to Mr. Woodruff. It's his counterclaim, and I wouldn't deem to speak on his behalf. The third question. You have filed an appeal from what you I think you assumed was a final judgment. So why were you convinced that you had a final judgment to appeal? Well, what we tried to do when we met the court initially remanded on this case because there were some of your summary judgment. The court said you don't have a final appeal. So what we did do is we went back to the district court and Mr. Woodruff and myself and Judge Nichols, we worked to try to prune the case to try to delimit the issues as much as we could. And we did that undertaking in good faith. I don't know why Mr. Woodruff decided to take a dismissal on those two counts. I do know why we decided not to file additional summary judgment motion with respect to counts one and two. And that is because the count one and count two both asserted that our console energy was or the subs were asserting that the Rod trustees did not have the authority, did not have the authority to decide the dispute. In essence, Your Honor, an arbitrability determination. The city has filed five counterclaims against you, correct? That's correct. And claims three through five, the district court said they are dismissed and they've been voluntarily dismissed. Am I right so far? Correct. Okay. Under what rule of civil procedure did the court take that action? Well, it doesn't, the ruling, as far as I can recall, it does not speak to rule 40. And I understand the entire action was not dealt with in Judge Baber's decision. But I will speak to the last question that was posed to the union, Your Honor. And that is why. Wait, just before you turn to that one. Sure, I'm looking for a number. Sorry, you go ahead. No, please. No, if there was a violation of rule 41, is that a self-jurisdictional though? Or is that just a, I mean, it's recorded. People argue all the time. The district court filed a self B6. But that doesn't mean there's not a final judgment. Just that there was a procedural misstep, right? The ruling says what it says. I would defer to the court's judgment on that rule. In fact, the entire action was not disposed of in the rule 41 motion. And it was under the auspices of a court order. So the second provision of rule 41 would apply. This is jurisdictional. I'd like to say it isn't. I don't have a case to point to you right now. There's a lot of Supreme Court precedent from this court that we don't treat every violation of a rule or a statute as having jurisdictional consequences. Defining jurisdictional consequences, unless it's very explicit. This rule is not explicit. So maybe, maybe there was a mistake. But I think what happened, there was a final judgment here. The district court said it was in complete control, entered an order, said it's a final judgment, wrapped up everything, disposed of all claims, maybe mistakenly disposed of a claim. But we hear appeals all the time from people who say the district court mistakenly disposed of a claim. But there's no doubt the district court was in control here and wrapped everything up in a single final judgment. Yes. And I think, Mr. Woodrum, and I'll speak on behalf of myself, what the union certainly did was look to the judge's September 30 decision, wherein he found two things. He found that the dispute was arbitrable, right? And he also found that it drew its essence from the collective bargaining agreement. He would be the second federal judge who found the dispute to be arbitrable. Because before Judge Faber can enter his order in joining the company for further changes in compelling arbitration, a predicate to that is a finding that the dispute is arbitrable. So I think that the parties were laboring under that understanding. Preliminary injunction. Sorry, Judge? Preliminary injunction. That's correct. And was there any factual finding or conclusion with regard to arbitrability? It seems to me it was sort of a standstill order. I believe a reading of Judge Faber's decision of March 17, 2017, reveals that he found the dispute to be arbitrable. Did you say that? And he compelled arbitration, Judge. Compelled arbitration. Compelled arbitration. Right. It was still waiting for the arbitrators to determine whether it was arbitrable. Well, typically the courts decide arbitrability unless there's an explicit agreement. And there's unambiguous, there's no ambiguity with respect to that issue. But the trustees, so here we have bailed suspenders. You didn't have that, did you have that kind of language here? Or was it for the district court to decide? We have language that says, in the collective bargaining agreement, that all disputes arising under Article 20 are under the jurisdiction and purview of the raw trustees. So I would argue, yes, we do have that language. And I think Judge Faber independently... That count as a type of unambiguous language that allows the arbitrators to decide it? Or was this arbitrability for a court to decide? I think... It has to be unambiguous. I think that the language of the contract is unambiguous. I think that the raw trustees... What did the district court judge find? Did he find that it was his decision whether it was arbitrable and that was a decision he was making? Or did he find that it's for the arbitrators to decide? He didn't preface the judge. He just found that they have the authority to render a decision with respect to the dispute. Now, under the collective bargaining agreement, Article 20, finally... I think to issue a preliminary injunction, you also had to find that you were likely to succeed on your arguments. Right. He also had to find... He did find that you were likely to succeed on your arguments. And he also had to find imminent harm. Harm that still persists to this day. So if you take Judge Faber's decision the day before he issued, okay, we're in the same posture we were then. This company, Consolidated Energy, acting as the plan administrative subsidiaries, communicated on four occasions to our retiree group. Two of those occasions, they said, changes are in the office, okay? We filed the ROD procedure. We filed the injunctive action on December 23, 2016. Ink wasn't dry on that injunctive action before Consolidated Energy again reached out to our retiree population. And not in this time. They didn't say, changes may be in the office. They said, changes have been made... Those 2017 letters were not within the scope of the arbitration. 2016 letters were. Right? No, no. All letters preceded the arbitration. The arbitration award in this case... You got the filing of the grievance. The grievance was done, you said, in December 21, 2016. Oh, that's correct. The grievance encompassed those two communications from 2016, not the communications from 2017. You might have thrown them in for window dressing in your case. But they were... That is not the scope of the grievance. Can the trustees expand the scope of the grievance? Well, they certainly considered all the communities... I'm just asking, can they extend the... Can they and did they extend the scope of the grievance? Well, the question posed to the ROD trustees was not... It was not based on... May have been based on those letters. But the question posed and articulated by the trustees was whether the respondent could make post-termination changes to the health care. But they had nothing to do directly with those letters. Now, of course, they did consider the second batch of letters. I think this is extraordinarily important for standing purposes. On January 12, 2017, Pensall Energy, on behalf of its subsidiaries, sent what's called a summary of material modifications to retired coal miners with health care issues, an aged and vulnerable population. And they set forth four parameters. They said, this notice is to inform you that of effective January 1, 2017, 11 days before, the plan listed above was amended. They made two ministerial changes. They changed the name of the plan. They excluded certain companies that have gone out of business. But here, and crucially, they said the administration section was amended to take into account the expiration of all relevant bargaining agreements, thereby eliminating the R.O.D. process. So by fiat, they told our retiree population that there was no more R.O.D. process. And in fact... I understand that letter. I've seen the letter. The trustees did not address changes to the decision-making process, the dispute resolution process. They addressed, threatened, in your view, threatened changes or proposed changes to benefits. That's correct. And that's what the injunction was, that no change in benefits. Now, benefit levels... The R.O.D. dispute process... So did that enjoin changing the plan dispute resolution process? Well, this one letter just speaks to these changes. They also required that if the plan administrator was unable to resolve the dispute, any disputant would have to file a lawsuit in the Western District of Pennsylvania. That's not what I'm asking. You're here on confirmation of an arbitral award. And the arbitral award was focused on... I was going to get to the changes. Well, I'm just trying to get right to it, because I don't understand. I'm not here to talk about their changes or asserted changes. They can't make changes to the plan. That includes changes... That's the award. Say they can't make any changes. The award, any of the trustees, so to Article 20, et cetera, et cetera, trustees have the authority to adjudicate the R.O.D. The trustees recognize that the respondent may make modifications or alterations to the health benefit plan for which it is the plan administrator. After the expiration of the... The changes in the employee benefit plan. Is the dispute resolution process in the employee benefit plan? Yes, it's part and parcel of the employee benefit plan. We have the model employee benefit plan in front of us. Where is it? It's set forth in the model benefit plan. It's set forth in the employer benefit plan. It's set forth in the... No, it may be other places. I'm talking about what the trustees were dealing with here. What page? I mean, I just missed it then when I was looking at it. Just a moment on the model plan, your honor. Okay, 471, a few pages after that. Where does it talk about the dispute resolution process? Yeah, 472, administration. And this basically echoes what's in the contract. Plan administrator is authorized to promulgate rules. The trustees of the health retirement funds will resolve any disputes, et cetera, et cetera, any disputes. And that's echoed in the EBP. And it's set forth in the collective bargaining agreement as well. So not only can they not diminish the level of benefits, they can't just by fiat say there's no more rod process. The rod process is a crucial administrative component of the employee benefit plan. It's been extant since 1978. It's been final and binding on the party since 1981. From our estimation, we believe Console Energy has been party to nine agreements since that language has appeared in collective bargaining agreements. The rod trustees also did something else that's of significance, judge, your honors. What they did is they reviewed the contractual language, the employee benefit plan, the model plan, as you indicated. They considered the submissions of the parties. They considered the injunctive hearing. And they also considered previous rod decisions. One of those rod decisions, tellingly, was a post-expiration rod decision. Now, under the terms of Article 20, rod decisions become precedent. They become impartial of the collective bargaining agreement. The rod decision referenced by the trustees, rod decision 88-711 was post-expiration. Since the issuance of that, Console Energy, the subsidiaries, none of the Console family of companies have made any effort to negotiate a change in that. So any claim that the rod process does not survive the termination of the collective bargaining agreement is belied by specific contract principles of construction and certainly belied by the fact that post-termination disputes have previously been resolved by the trustees. Got that. And so those changes in those letters never happened because you got the preliminary injunctive. That's exactly right, your honor. And then the trustee award comes down. Brett? It says Console can't make any changes. As plan administrator. Yes, as plan administrator can't make any changes without negotiation. A post-expiration. Expiration without negotiation. Without agreement. Agreement, thank you. Can't do that. Okay, that's who this award runs against. That Console plan administrator no longer exists. The entity named and ordered not to make any changes by this award no longer exists. Well, it no longer exists in that form. Yes. No longer exists. Did you substitute in? You need a program here to follow the players. Well, it's not just that we need a program. There's legal consequences when people are substituted or not. When one entity disappears and no one substituted in, I didn't see anything in your third amendment complaint speaking confirmation of this award that said we actually want to change the entity against which the award runs. There's one way to read your complaint is saying not just confirm, but actually reinterpret, update, change the operative target, and then confirm. Is that what you intended to do? Or did you just want this award confirmed? No changes, no adjustments. At the time this award issue could solve was the plan administrator. At the time of your third amendment complaint, were you asking the district court to just flat out confirm, don't touch anything, don't do anything, don't say anything, just confirm? Or were you asking in your complaint for the court to first make clear that this award runs against either the subsidiaries or what you've now told us that argument is this new consul entity? We think the form is sufficient. And here's another thought, another thought, Judge. The trustees said no changes to the plan administered by Consul Energy. Exactly. But the contractual... It said consul. No changes to the plan. To the plan, which the subsidiaries, which applies to the subsidiaries contractual commitment to provide benefits. I'm just not understanding. What good is it to you? What is redressed by an order confirming an award, regulating behavior by an entity that no longer exists? The current action is against the subsidiaries. So we're arguing that it doesn't run to the consul. It runs to the subsidiaries. Explain to me how this works on the LMRA. If you confirm an award against an entity that no longer exists, how does that award do anything to the subsidiaries? Well, let's imagine that the subsidiary said, hello, parent company. We're not happy with the way you're administering our plan. We're going to substitute another plan administrator. Would this decision obtained? Absolutely. It doesn't matter who the plan administrator is. If trustees have issued their decision, then no post-contractual changes can be made without agreement. What authority can you provide me? You do LMRA all the time. I do not. It says if you have an arbitration award confirmed against a single entity that no longer exists, that binds, legally binds all by itself. And it's not named in the award. Well, if that were the case, I don't know the word. If that were the case, What case can you provide me? Legal authority. Is there any such authority? Not off the top of my head, your honor. But if that were the case, every adverse decision would be followed by corporate restructuring. There's ways to write things. I mean, people do this all the time. Well, Judge Nichols, in his opinion, Against consul and its subsidiaries. Name them in the grievance. Name them, have them named in the award. And then you're covered. I understand that. I'm just trying to understand. No, it's your... I understand that. I understand how your confirmation... No, no, it's well taken, your honor. And I don't mean to be combative with you. But we're talking about formalistic approaches here. When in fact, everyone in the rudder, in this union, it's been around since 1890. It was the consul, its subs, and everybody at 1100 Consul Avenue up in Pittsburgh are one in the same. Everybody. Mr. Salvatore testified... I didn't know that. Everybody in the full... Okay, I'm sorry. And I'll tell you one person who knew it, is the HR administrator for consul, Mr. Salvatore. He testified that these companies had no employees. He testified that to that during the injunctive hearing. I testified to that three years later. So I have to apply. So I recognize you talked about the 2017 letters, but the trustee's decision said no changes have yet been made. And then the injunction made sure no changes were made. Trustee's decision was made post injunction. And the trustees made mention of the fact the changes were not made because of the extended injunction. There was a letter, slightly, I guess from your members' views and your view, but there were no changes made at the time of the award. The injunction has long since expired. The injunction has long since expired by its own terms. And still no changes have been made in the intervening six years or four or five years before you went to district court here on your 30th... Judge, I'll tell you why that is. I'll tell you, yes, I'll tell you why that... Actually, that's right though. Correct. And I'll tell you why that is. When the UMW approached Judge Faber in the Southern District and said, hey, we want to file a second amendment complaint, the judge issued a... I'm not sure. I think that was opposed by Mr. Woodard and his clients. But the judge issued a decision and his decision was May 21, 2018. And he basically said, the union wanted to include a count to continue the preliminary injunction until the court confirms the arbitration decision. At the hearing, the May 10, 28 hearing, counsel for plaintiffs requested the court strike this count in light of defendants' representation that it would continue to offer retirees the benefits available under the employer plan until the conclusion of this action. That lone assertion is the only thing... What page of the JA is that? Oh, I'm sorry. I apologize. That would be 315. The decision begins, I think, 5 is the Joint Appendix 315. Sorry, sorry. The language that you were reading about, they agree not to make any changes to litigation authority? Yeah, during dependency of this litigation. Yeah, what page is that? I believe it's on 315, Your Honor. Wait a minute. It might be... That's the beginning of the opinion. That's where the decision starts. It's the footnote 5. It's on page 320. So that promise, we believe, is the only thing that stands between Consol Energy making changes for the subs making changes to the health care plan because that's the only reference in the record that they would do so. The court has it right that any changes were nullified by the injunctive decision of Judge Faber. And we believe that once this action is concluded, that the subsidiaries will continue with making changes to the plan. What's the line in footnote 5 again that you were reading? I'm sorry, Your Honor. What's the line in footnote 5 again that you were reading? Oh, yes. It's footnote 5. It's 320. Joint Appendix 320. What's the key line? Oh, the key line. At the hearing, counsel for plaintiffs requested the court strike this count in light of defendant's representation that it would continue to offer retirees the benefits which you're entitled until the conclusion of this action. So the action was an action for confirmation. Well, I take that to mean until the conclusion of this litigation. But if it's subject to dispute, that puts us in an even more tenuous position. And at any point, consul can say, well, that wasn't part of what we represented to Judge Faber. That's the only thing that we think, Your Honors, that stands between consul making changes to the plan of the subsidiaries. I apologize. Falling into my own rhetorical device. The subsidiaries making changes to the retiree health care plan. We kept you up here a long time. Thank you very much. Good morning, Your Honors. My name is John Woodrum. I represent the companies in this matter. And first, we'll respond to the jurisdictional issues you presented in the procurium order. I have a question. Yes, ma'am. Do you agree that this new consul is the plan administrator or the subsidiaries themselves the plan administrator? Or is there no difference? My understanding that the new parent corporation is the plan administrator of this continuing plan. But the new administrator has no corporate relation to what's now known as CNX, which was the plan administrator during this period. These companies were as part of a larger package, spun off, and they exist under a separate publicly traded company at this time. And have really since the month that the arbitration decision came down is when the restructuring occurred. So the old plan administrator has not been in that position since almost the date decision came down. So the new plan administrator, you're here on behalf of the new plan administrator. Is that correct? I'm sorry, sir. You're here on behalf of the new plan administrator as well as the subsidiaries. No, I'm only here for the subsidiaries. The new plan administrator is not a party case at all. Can you then go to the first question in the order that was asked about are the subsidiaries parties to the 2017 arbitration award? And are they bound by the 2017? No, your honor, they are not. And from the very time this rod was filed, they protested it under, they submitted a response under protest to the panel, to the trustees. So they weren't a party to the arbitration award, right? That they were not named in it. And they specifically in their protest, response under protest, they noted that Consol Energy was the main party, had no employees, had never employed these people. And they weren't bound by it. And they were not bound by the 2017 arbitration award. Correct? Correct. Okay. Then how is it that the subsidiaries have standing to challenge the arbitration? Well, I mean, that's the essential question that you put to us in your per curiam order. And the reason we have standing is because, though not a party to the award, the award very directly impacts us. We are harmed by the award because it's our plan. We did the bargaining about it. And so far as there are changes to be made in the future, we will be the ones negotiating with the union. Yet in the award, the trustees reserved their jurisdiction, even though we're no longer signatory. I don't know the answer. It's not a rhetorical question. If you were to then just defy the award and change what the award says can't be changed, and then you get sued for that, wouldn't you have a good defense? We're allowed to make those changes because we weren't a party to the arbitration award in 2017, and we're not valid by the arbitration award in 2017. We would certainly make that defense. Then why do you need us to decide that question now when the court can decide that question when there's actually a huge controversy? Because the award, whether, if the award is not vacated, it remains, arbitration awards don't have to be confirmed in order to retain vitality. So the award itself will remain. But you're not bound by it. We're not bound by it, but the problem we would face in the real world is the union would promptly violate a grievance with the trustees who have said that they have continuing- I mean, it sounds like, I get that, but it sounds like you want our court to issue you an advisory opinion today so that you can use it in different disputes down the road. No, Your Honor. We're not asking you for an advisory opinion. We're simply asking you to vacate this award. Don't pull back and say, we don't have any jurisdiction here because the award will stand if it's not vacated. And the award itself says that these trusts- we would have to relitigate everything that we've been litigating for the last six, seven years. Do you have any precedent on your side that is analogous to this situation where what's happened is there's been an arbitration award that does not bind the plaintiff, but the plaintiff wants an Article III court to declare the arbitration award invalid, vacated, because it's having some kind of collateral effect on the plaintiff? Not directly on point. And it's partly a function of the very strange way which this case has evolved. We found an analogous situation under the environmental statute. So there's a Fourth Circuit decision that involved harm to a downstream individual who felt that a certain facility was going to pollute a river and harm it. And the Fourth Circuit said that it had standing because as a downstream entity, it could be harmed. And in our case, not only could we be harmed, we feel we are harmed because the arbitrators decided that they would, until all the retirees are dead, they have the right to resolve disputes, any dispute that comes under this plan, notwithstanding that the contract itself, the 2011 agreement gave the signatories, my clients, the authority to amend the plan unilaterally after the contract terminated. So the contract terminated, they amended their plan to say that this panel no longer has any role in adjudicating disputes under the plan. Yet the trustees' decision, panel's decision, says we do. Could you make any of the changes you referenced in response to Judge Walker that you want to make directly? Or would you have to do them through this new plan administrator? Who would have to implement the change? Well, the plan, the companies are responsible for the plan. They are the plan sponsors. They designated- Who makes the changes, though? Do you direct console two to make the changes? This is new console? Because in the first round of all this, it was the plan administrator that was announcing the changes. Right. It's my understanding that the plan is still in effect. The only thing that's changed, because- I'm not saying the plan is still in effect. It's certainly still in effect for retirees that were covered by this time window and the collective bargain agreement. But what I'm asking you is really, in the first round, what set all this off was companies, employers wanted to make changes, but they didn't announce it directly. They had the plan administrator notify the beneficiaries of proposed changes in the 2016 letters and actual upcoming changes in the 2017 letters. And so I'm just asking whether that structure would continue now. Would you yourselves be the ones that would make the changes? Or is that- That's why you all have a plan administrator. You tell them what to do, and then they notify beneficiaries, here's what's changing. The latter, Your Honor. The latter. So is consul to your agents? Consul- The new consul. The new consul is my understanding. We don't represent them, and they're not in the case, but it's my understanding. I've been told that the new consul is the plan administrator. So I guess they're the plan administrator, but what you should know is, is the new plan administrator your agent, your client's agent? The district court found at the preliminary injunction stage that the first consul was the agent of the subsidiary. And it sounds to me, from your answer to my question, that the same would continue now, that this new plan administrator, new consul, for at least these purposes, is your agent, because that's to whom you would go, assume there's no trustee decision or anything like that. That's how the process works to make- I think administratively, that is likely how the process would work. So the new consul is the subsidiary's agent for these purposes? Would be the agent for purposes of handling the- well, not- yes, making the changes in the sense of changing the plan, but it's always the subsidiary's responsibility to- because they have the contractual obligation. The parent, the non-signatory parent and administrator does not have the contractual authority to make the changes. Therefore, it doesn't have the legal authority. It would derive from the signatories themselves. I know you and your clients have maintained for years and years that you are not bound by the agreement, but if the one that binds is just your agent, can an agent be bound, but the principal not? This issue came up in Consul Energy's appeal of Judge Faber's preliminary injunction. That very issue was one of the key issues in the case, and in oral argument, the court, I forget, I think it was Judge Niemeyer, made the point that an agent binds the principal. The principal, i.e. the company, doesn't bind the agent, so- did I get that right? Right. If the agent binds the principal, then you are bound by this award. The acts of our agent, yes, but the decision to make changes to the plan- I am crazy. That's it. Excuse me, I don't have an answer. You're coming back crazy? I need help. I'm a ventriloquist on the side. If you decide you want to make changes, but you can't make them because if one were to assume that new consul would be bound by this confirmation, we're just like old consul. No, I don't- I mean, we're not bound to it. It was an issue. It's told us the whole reason you have an injury is you can't make changes with this thing. How can you- this is what I'm not understanding. How can you both not be bound by it, as you said, and yet be bound in a way that injures you, that keeps you from making any changes? Because the arbitration decision, though not directed to the subsidiaries, remains a valid decision at this point. It's never been ventilated. It's a decision that's out there by this panel. And going forward, anything that these companies do will be challenged by the union as- It's going to be challenged. You're going to argue we're not legally bound. And that if there is such a challenge, you're going to say, what are you all bothering us for? We're not- you can have your award against an entity that doesn't exist. We're not bound by it. Not bound by it, but it does provide precedent. What's going to happen as a practical matter? And I think probably- But precedent- and maybe I'm being too court versus arbitrator about this. A long line of people could come in any case and say, judges, if you rule way X, that's going to bind me in the future. But they are not parties. And they're not bound by our decision. And there's no way they have articles standing. Maybe they'll come in as an advocate, but they don't have articles standing because we could create a precedent that could affect them in a dispute, maybe if they have one in the future. I agree that that is a position we would take that we're not bound to the decision. But what will happen- It's going to be a pain for you. Pardon? It's going to be a pain for you. Oh, it's going to put us right back through this cycle again. Because the union will file a rod with the trustees, who've already said that their authority survives the labor agreement, even though we're no longer a signatory. They will file that rod and they will go into federal court, probably in West Virginia, and get it enforced. And then back in the suit. The only way to prevent that and create a level playing field is to vacate what is obviously a defective arbitration decision. It's defective because it's against the wrong party. Or a non-signatory entity that's not subject to the arbitration. Could you make that argument to future arbitrators? In other words, do arbitrators have the authority to overturn past arbitral awards? This particular labor contract, as I recall, if the provision is still in there, says that prior arbitration decisions are precedential. But an arbitrator is not bound to follow a prior arbitration decision in the way that judges would be by other decisions of panels in this court, for example. So it would be, I'm sure, taken into account by a new arbitrator. But you could persuade a future arbitrator that there were enough laws in the 2017 award such that the future arbitrator should act contrary to the 2017 award. Well, we would first argue that that arbitrator has no authority. And then we would be compelled. I suspect this is the way it would happen. We would then be subject to, we'd seek to stop the arbitration, which is what we tried to do in this case in the first place. We would either win or lose on that basis if we lost, and I think in some courts that have protected the processes, that the new, that we, the companies, might well be brought back in and then be subject to an order to compel arbitration. We would make those arguments to the new arbitrator and say in response to the union's argument that this issue has been decided. Trustees have already decided they have the authority. And it's not a general authority. It involved this plan. We can't say that, oh, that was some other company with some different plan. It's this very plan that this invalid decision purports to interpret and enforce. So we would have that burden to bear with a new arbitrator. And then we would have to go back through the process that we've just been through in order to determine that we have the legal right to administer our retiree benefit plan according to the terms of the plan. You don't administer it. Pardon? You don't administer it. Well, it's administered by our plan administrator. Your agent. So I say I'm corrected on the technical piece of that. We don't administer it, our plan and our plan administrator has to do what we tell them as long as it's lawful. So it's our plan. And therefore, we. So you said as long as it's lawful. So if you said the plan administrator, new plan administrator, make this change to these retirees benefits. Could the plan administrator do that with this arbitral award pending? It would violate the award. So would it be lawful for the plan? You said you just said. Yes. Plan administrator does what you tell them unless it's unlawful. And so it would be unlawful if the plan administrator couldn't make the change. We would argue it's very lawful because we're not bound by it. I'm just saying. I agree with Judge Walker that. You don't need us to do anything for you today. You already have the lawful authority to do what you want to do. We believe so. But it's unlawful as long as the court says. It's your burden to show standing and under your own theory and your own admission, you're not injured by the current state of the law. We believe we are injured because they're allowed to do everything you want to do under the current state of the law, because that one arbitration award from 2017 is invalid. So it's not actually binding you. That's what we say. Sounds like you're saying you don't have standing because you're not injured. Is your injury that you're going to have to go through all this procedure, litigation procedure, and arbitration procedure again? That's the injury? That's the injury. Yes, Your Honor. It's not an Article 3 injury. Well, it's harm to us because we are inhibited by an arbitration decision that purportedly interpreted our plan, which is not... We can't be held in contempt for violating because it's not against us. But if we make a change, we are in violation of an extant arbitration award, which says that these trustees have perpetual authority to decide disputes, whether or not you're signatory to a contract. I'll make sure I've got this. If you're standing to oppose confirmation, it's clear, right? You just want to be able to actually seek vacature in addition, right? We need vacature, yes, Your Honor. If you're not in a position to seek or get vacature, and the court says we deny the request for confirmation on the ground that you're not a party to the award, some arbitrator later is going to bind you? We run that risk because there's a valid arbitration award, and we have a district court decision that says the trustees have that authority. So it becomes murky as to how that would turn out. We believe we are right under the law, but we would have to go through that process and take that risk again. So we are, as I said, we are inhibited from making changes because we know what lies ahead if, in fact, this award is not just simply vacated as being violative of the trustee's authority. At the end of his 2022 decision, says the subsidiaries acknowledge their obligation, their quote, obligation to provide health benefits to eligible retirees post expiration. Is that accurate? We do have a contractual, a commitment in the expired contract to continue to provide benefits to retirees. It's sort of analogous to a continuing term and condition. So we have that obligation under the expired agreement, and we agreed to it, and we're doing it. I mean, we never proposed determinate benefits. That was never the issue in this case, and the case wasn't about that. The only issue in the case was we wanted to provide them differently. You wanted to change. Well, that's very much disputed. Right, and then that's in dispute. And we don't mind litigating that issue. We just don't think these trustees are the proper parties to hear that issue, because we didn't agree that anything we do after the contract expired could be decided or resolved by this panel. We're prepared to defend any changes we may make, even under that ongoing requirement that we continue to provide. All we agreed to in the contract was to continue to provide their benefits at the benefit levels. So if we change something that a retiree or the union thinks violates that, they have other federal court remedies that they can pursue to challenge that. The only issue in this case, in this arbitration, is that these arbitrators don't have the authority to do that, and so that decision should be vacated. May I ask, maybe this is a more straightforward question than all this standing stuff, and that is, the jurisdictional basis for your counterclaims is Labor Management Relations Act, correct? Correct. What contract violation have you claimed? Because the jurisdiction is for violations of contracts. What contract violation do you say? We... UMW did. Well, I think the courts have held in... It's a good question, but I think it's been resolved. I think the courts have said that a suit to vacate is an action under 301. So we believe that... A suit to vacate when there's been no violation of a contract? Well, if the arbitration decision exists and a suit to vacate the arbitration decision, the decision's there until it's vacated by a court. So it can't get... If the arbitral decision was not the product itself of a contract violation. So just assume from Ruth's question that there's no... What if there's no Labor Management Relations Act jurisdiction over the suit to confirm because there's no alleged violation of a contract? And I think courts have also said participatory violations aren't good enough. Right, it's... The fear that a violation could happen... Well, it is... Then your jurisdiction would disappear as well. It's a circular problem, a conundrum, in that... There's rise or falls with whether there's... They've established violations. Right. Our argument is that there is a violation of the contract because the panel, an arbitration panel, wrongly decided an arbitration or an issue under the contract which the union in its complaint is trying to enforce against us even though we're not a named party to the arbitration because the arbitration decision interprets our obligations under a benefit plan. So this case, that count was originally filed, I think, the day the contract expired. So we filed in Pennsylvania and that case, long story, but it ended up getting merged in, consolidated with the union's case here. So we... What cases say that vacature of an award... What cases? Is it cases from this court or the Supreme Court that said that seeking vacature of an arbitral award satisfies LMRA 301 jurisdiction? I came across it in reading. I didn't make a note of it because it wasn't an issue at that time, at least until you presented it to us. So I don't recall that case, but there've been a lot of case readings over the years in this particular action. One quick question. If you do not have standing for your counterclaims, does that mean that there's no party adverse to the union's one count claim? If we don't have standing, there is no party because it purports to bind Consol Energy, which is now CNX, which is not even in the frame. And they were dismissed out by Judge Nichols and the union didn't appeal that dismissal. So I think that's correct, Judge Walker. There is no other way to get relief here. Usually when there's a corporate reorganization, some entity assumes the liabilities of the predecessor entity. They can't just get out of liabilities that way. Otherwise it'd be really convenient. Do you know who it was? Was it CNX? Was it this new console? Who assumed the liabilities of first console? That was a major corporate transaction. It's documented in SEC filings. I'm sure that Consol Energy would have retained some obligations. That's almost always the case. This new Consol Energy or CNX? The CNX, the entity that became CNX, the seller, if you will, retained our seller, sold us or disposed of us, would have retained some obligations. With respect, there were many companies involved, not just these subsidiary companies that I represent. So I'm sure that some obligations were retained. I don't know with regard to this specific case what the arrangement was, but there's no damage. I'd like you to find out what entity assumed, took over this liability, liability under this confirmation award. Well, there's no liability under the award because there are no damages. There's compliance liability. You said that's a whole injury you have here. Someone's supposed to... I don't know. It's very difficult to measure that kind of damage. I don't know how. I don't even know whether the parties discussed that. I know that the parent was certainly aware that these companies had been... They were not signatory at the time of the actual reorganization. But they know that they had retiree liability. So I think what the parties most likely addressed was who's going to be responsible going forward for payment of the retiree benefits. But the council was the plan administrator. Why would it have any liability at all? It wouldn't. The obligation of the sons. Subject to an adjunction. That's a confirmation award. Subject to an adjunction and a confirmation. Well, there are many categories of UMW retirees and the parent, not to further complicate this case, but the old Consol Energy was liable for a large group of UMW retirees under a statute called the Coalition Retiree Healthcare Benefit Act. So there are thousands of those retirees. Okay, so it was by law. And it was by law that they were made, along with the employers, they were made responsible. So they can't, and their cases have held it, they can't transfer that liability. They can't negotiate or get an agreement to transfer that the buyer will assume it. But in the end, if it's not provided, it would come back to Consol at C and X. These retirees are not in that position. They're not protected by statute. So it's simply a collective bargaining obligation that would determine where that liability is. And I do not know whether Consol, the old Consol Energy, I don't know who's paying the retirees, how they're getting their benefits, but it was a known liability, if you will, that that obligation was going to continue. So I suspect that they did have some understanding about who was gonna assume it. Contractually though, the old Consol would not have the liability because the liability rests with a subsidiary. So in that sense, neither parent has it. It lies with a subsidiary, but somebody is providing the benefit. Thank you. Thank you very much for your extra time up here too. I appreciate it. Thank you. Mr. Fagan, we will give you three minutes for rebuttal. I know you asked for five, but we have been a long morning. I'll do this quickly. Thank you, Mr. Woodrum. Mr. Woodrum gave no compelling reason why this award should be vacated. This award drew its essence from the collective bargaining agreement. I think I might be repeating myself, but it reviewed the plans, the contract language, the submissions. The submissions not only of Consol, but if you look at Joint Appendix 500, you can see the submission of Mr. Woodrum on behalf of the subsidiaries under Pro Tem. The 17-page letter that he writes to the trustees objecting to the process, not to the award. It had an issue. That's kind of the weird thing about this award because sometimes it talks about respondent singular to plan administrator, but then it says on J-371, the first page of the award, the respondent filed four responses to the complaint. Well, that's right. Well, Consol filed zero responses to the complaint. Those four responses to the complaint were filed by the subsidiaries, right? I believe that's the case. Right. The trustees said it was respondent that filed them. So it seems like there's times that the trustees are treating the subsidiaries and Consol as one and the same. And again, the next paragraph, in the second response, the Respondent's Legal Counsel. Well, that was- Mr. Woodrum represented- The subsidiaries. A lot of times, it treats them as one and the same. Subsidiaries. As a position of respondent. And when Consol didn't show up, so I'm just a little confused as to who the trustees thought they were issuing the award against when respondent singular sometimes means the plan administrator and sometimes means subsidiaries. Right. In that March 17th letter, Mr. Woodrum makes all those arguments. I'm asking you about the trustee decision. When it refers to respondent in the singular, it sometimes is clearly referring to the subsidiaries and sometimes it's referring to the plan administrator Consol. How do we know whether this award runs just against the plan administrator respondent or whether the trustees thought the plan administrator and subsidiaries were one and the same? Yeah, I believe the latter to be the case and I believe the language is well chosen. This is an extraordinarily sophisticated panel. It may be. This language seems extraordinarily not well chosen. We think it runs to all parties, the respondents and the subs. If I can get back to Mr. Woodrum's argument here, he gave no reason why this valid arbitration award should be vacated. District Court got this spot on. If you read the award, every assertion is backed up with reference to the record submission, the preliminary injunction hearing. They considered the SPD plans, 120 pages of SPD plans that Consol submitted to them. They also considered whether the changes proposed by Consol, the administrator, would provide the same level of benefits. Ultimately, they decided that was not the case. So that's a clarification question. After, now I'm going to go to the district court, our court has remanded. The parties file a joint status report and they suggest dismissing counterclaims one and two, but instead the court grants summary judgment on counts one and two, or judgment at least. Yes, I think it was just straight up dismissal, your honor. There was no predicate summary judgment issue and that's what the court's concerned about. We thought that if you read Judge, and I apologize for the pause, if you read Judge Nichols' September 30th decision, he makes two key decisions. He was arbitrable and it drew its essence from the contract. We thought that based on that decision, that issue of arbitrability was foreclosed, was conclusively established. Apparently he granted you summary judgment on those counterclaims. Yes, and Mr. Woodrum's counseled one and two, or that basically the trustees lacked the authority. And the arbitrability determination trumps those arguments. So maybe my question is more procedural than substantive. It seems like you jointly suggested a resolution of the case, right? In particular, counts one and two, and then you gave two options for counts, two or three options for counts three through five. One was dismissing with prejudice, one was dismissing without prejudice, likeness, lack of prosecution. Prosecution. Did Judge Nichols agree with your recommendations? Did he go his own way? What happened? Judge, what happened was in Mr. Woodrum's good faith, certainly the UMWA did, and of course Judge Nichols did. What we were trying to do, the court that was already remanded to them, and he said, gentlemen, give us some ideas here. And we thought we would try to tailor the case as narrowly as we possibly could. And again, if there's a procedural defect in that, I apologize to the court on behalf of the union. And perhaps the best option is to remand to the judge for some clarification on the concerns raised by the court. I think the best option would be to argue that there's nonetheless a final judgment, even if there was a procedural error, because it meets all of our cases that define what a final judgment is. So I understand, Judge. Do you want to go back and do it again? Oh, absolutely, Judge. But these are not my concerns, they're the concerns of the court. And if they prevail after our argument today, perhaps that's the way we think, that we have a valid arbitration award. I think it supports entirely with the collective bargaining agreement, the trilogy, the trilogy progeny. And we also believe that we have standing. Thank you. Thank you. Step up to the microphone, sure. In fact, call the court's attention to what I think is very helpful on the question of finality. If the court would look at its own decision in the case of North American Butterfly Association v. Wolfe. Judge, I'm sure you're familiar with that case. 977F3-1244, the 2020 case. In that case, which involved some of the similar kinds of issues, the court stated to decide whether an order dismissing without prejudice left nothing more for the district court to do, making it final or instead signal the district court's expectation that the action would continue. And in this case, the order, we think, makes it very clear that Judge Nichols thought and intended that his order disposed of the case. He says this is a final appealable order and the clerk is directed to terminate the case. So on the finality question, we believe that's really effectively answered by the court's prior decision. Thank you. All right. With that, the case is submitted.
judges: Millett, Walker, Ginsburg